## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| DANIEL F. GREELEY, | Civil No. 04-5023 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| FAIRVIEW HEALTH SERVICES and DIANE IORFIDA, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Charles T. Hvass, Jr., **HVASS WEISMAN & KING**, 825 Nicollet Mall, Suite 1025, Minneapolis, MN 55402, for plaintiff.

Penelope J. Phillips and Brian T. Benkstein, **FELHABER LARSON FENLON & VOGT**, PA, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402, for defendants.

Plaintiff Dan Greeley has filed this lawsuit against Fairview Health Services (his former employer), Diane Iorfida (Senior Vice President of Human Resources of Fairview, as Plan Administrator), and UNUM Life Insurance Company of America.[1] The issue is whether defendants wrongfully terminated Greeley's disability benefits when he reached age 65. The dispute arises because defendants gave Greeley a document explaining "enhanced disability benefits," which included a typographical error stating that Greeley was entitled to the disability benefits until age 67. This matter is before the Court on the parties' cross motions for summary judgment. The parties also move the

---

[1] By agreement of the parties, UNUM Life Insurance Company of America was dismissed as a defendant on August 23, 2005.

Court for an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132. For the reasons discussed below, the Court grants in part and denies in part both parties' motions for summary judgment. The Court denies the parties' motions for attorneys' fees and costs.

## BACKGROUND

Greeley worked as a pathologist at Fairview beginning in 1986. In 1999, he quit practicing because of a disabling medical condition.

In February 1998, Fairview enhanced the pathologists' disability benefits and had a meeting with its pathologists to discuss benefits and related issues. The pathologists received a packet that contained a memo and an attached summary ("February 1998 Memo"). The February 1998 Memo states in relevant part:

> This is to advise of an enhancement to your current benefits which insure you in the event of disability. The improvement is effective immediately.
>
> Your benefits will begin after 30 days of disability or after all of your accumulated sick pay has been used (100% of pay). The benefit level is 66 2/3% of pay to a maximum benefit of $20,000 per month. The benefit continues as long as you are disabled and unable to work in your specialty area of medicine, until age 67 and may extend beyond depending on your age as of the date of disability. Your disability is covered under two plans, short term and long term, whose benefit payment levels are identical.

The February 1998 Memo also states, "Attached is summary of your current benefits, including the enhanced disability benefit. Detailed descriptions of the plans will be mailed to you separately when printing is completed." The attached summary includes nothing to contradict the age 67 representation in the February 1998 Memo. "2/98" is

printed on the bottom corner of the document.  Detailed descriptions of the plans were never mailed.

In December 1998, Greeley began the process of applying for disability benefits because the chemicals he used in pathology were aggravating his asthma.  Greeley hired an attorney to assist him in the application process.  His attorney arranged a meeting with Fairview to discuss Greeley's application for benefits, and he received a copy of the long-term disability plan document, titled, "Your Long Term Disability Insurance Plan."  This document states that disability benefits will be provided to age 65 or 70, or for one to five years, depending on the age of disability.  "10/1/96" is printed on the corner of the document.  Greeley applied for and received short-term disability benefits, and when those benefits expired, he began the process of applying for long-term benefits.

In 1999, Greeley realized that the February 1998 Memo conflicted with the plan documents his attorney acquired but did not inquire about the discrepancy at that time.  Greeley assumed he would be covered until 67 based on the February 1998 Memo because it notified pathologists of "enhanced" benefits.  In 2001, Greeley inquired about the maximum benefit period because Greeley thought he might be eligible until age 70.  An employee of human resources sent Greeley a memo, January 2001 Memo, which explained that the cut-off was age 65.  The memo states, "I spoke to Barb Eischen regarding your LTD benefits, and she was not aware of the disability age be [sic] extended to age 70.  Our Plan Provider (UNUM) information states that it is to age 65 and we would be following the contract that UNUM has."

In October 2003, Greeley's attorney sent defendants a letter requesting assurances that benefits would continue until age 67. He received no response. In October 2004, defendants sent Greeley a letter informing him that he had reached age 65 and that his benefits were exhausted.

Greeley filed this lawsuit in December 2004, asserting claims against defendants for improper denial of benefits under ERISA and fraud under Minnesota common law.

## ANALYSIS

### I.  Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.  Timeliness of Plaintiff's Claims

As an initial matter, defendants argue that Greeley's claims are time-barred. The "discovery rule" is used to determine when ERISA claims accrue. *Union Pac. R.R. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998). According to the discovery rule, a plaintiff's

cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation. *Id.* The general rule is that a cause of action under ERISA accrues after a claim for benefits has been made and has been formally denied. *Id.* A cause of action may also accrue before a formal denial when there has been repudiation by the fiduciary that is clear and made known to the beneficiary. *Id.*

Greeley filed this action within a few months of receiving a formal denial of benefits. Defendants argue that the January 2001 Memo is a clear repudiation, and thus Greeley's cause of action began to accrue prior to his formal denial of benefits. The Court concludes that Greeley's claims are not time-barred. The January 2001 Memo is not a clear repudiation of benefits because it does not explicitly correct the typographical error in the February 1998 Memo.

## III.   The ERISA Claim

ERISA requires the creation of a Summary Plan Description ("SPD"), which is the statute's established means of informing plan participants of the terms of the formal plan and its benefits. *See* 29 U.S.C. §§ 1022, 1102; 29 C.F.R. § 2520.102-2. The SPD functions as "a plain language summary of the plan's terms and benefits that must be distributed to participants." *Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 888 (8th Cir. 1999).

Whether or not the SPD meets the mandatory requirements set forth in the statute and companion federal regulations is important because it determines the legal effect of its contents. *Antolik v. Saks Inc.*, 383 F. Supp. 2d 1168, 1175 (D. Iowa 2005). If an SPD

does not meet the formal requirements, it is deemed "faulty." *Marolt v. Alliant Techsystems*, 146 F.3d 617, 621 (8th Cir. 1998). To recover benefits based on the terms of a faulty SPD, the beneficiary "must generally show that he relied on or was prejudiced by the SPD's description of the plan's benefits." *Dodson v. Woodmen of the World Life Ins. Soc'y*, 109 F.3d 436, 439 (8th Cir. 1997). However, an SPD can be so "hopelessly inadequate" as to not even be deemed faulty. In the case of a hopelessly inadequate SPD, the terms of the summary have no legal effect on the terms of the formal plan. *Palmisano*, 190 F.3d at 888.

Here, the February 1998 Memo and the attached summary provided by defendants constitute a "faulty" SPD. These documents contain the name and type of plan, description of the eligibility requirements for coverage, plan year, and how the plan is funded. Although the documents are missing several other requirements, the documents contain important details and are therefore not "hopelessly inadequate." *Cf. Palmisano*, 190 F.3d at 888 (giving a document no legal effect because it contained only one piece of information required by ERISA). Moreover, the February 1998 Memo was the only information that employees received on the "enhanced disability benefit." Fairview Hospital's benefits manager testified that the February 1998 Memo was the "formal notification" of the enhanced disability benefits.

Because the Court concludes that the documents at issue constitute a faulty SPD, plaintiff must make a showing of reliance or prejudice to be entitled relief. *Dodson*, 109 F.3d at 439. Greeley offered no evidence that he changed his course of action or otherwise relied on the faulty SPD. At oral argument, Greeley explained that he could no

longer work because of his disability, so he had no choice but to accept the disability benefits that were offered him.

It is not clear what showing of prejudice is required under Eighth Circuit law. *See Antolik*, 383 F. Supp. 2d at 1177. The Second Circuit requires a plan participant to show that he or she "was likely to have been harmed as a result of a deficient SPD," and allows the employer to rebut this showing "through evidence that the deficient SPD was in effect a harmless error." *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113 (2d Cir. 2003). The Court adopts this standard and applies it here.

Defendants' error occurred in a central provision – the age at which benefits expire. The faulty SPD promised Greeley disability benefits to age 67, which is two more years than Greeley would have received under the formal plan documents. The consequences of a faulty SPD must be placed on the employer because the individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors. *Burke*, 336 F.3d at 113. Moreover, if defendants wanted to disavow the statements in the February 1998 Memo, they should have promptly corrected the error.[2]

Defendants cannot show that promise of benefits to age 67 was a harmless error. The nonpayment of two years of disability benefits is a significant harm. Because the faulty SPD prejudiced Greeley, the Court concludes that it must be given legal effect.

---

[2] The Court is troubled by the fact that defendants never notified plan participants of the mistake or explicitly corrected it. Defendants were given the opportunity to correct the mistake in 2003 when plaintiff wrote defendants and asked for assurance that he would receive disability benefits until age 67. Defendants never responded to plaintiff's letter.

Accordingly, the Court grants Greeley's motion for summary judgment on his ERISA claim.

## IV.     Preemption of Plaintiff's Fraud Claim

Defendant argues that Greeley's fraud claim under Minnesota common law is preempted by ERISA.  ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  The Eighth Circuit holds that state common law claims are preempted by ERISA if they "relate to" an employee benefit plan.  *Estes v. Federal Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005).  Greeley's fraud claim directly relates to an employee benefit plan, and therefore the Court concludes that it is preempted by ERISA.  Accordingly, the Court grants defendants' motion for summary judgment on Greeley's fraud claim.

## V.      Attorneys' Fees and Costs

The Court "in its discretion may allow a reasonable attorney's fees and costs of action to either party."   29 U.S.C. § 1132(g).  In an ERISA case, the Court should consider the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Lawrence v. Westerhaus*, 749 F.2d 494, 495 (8th Cir. 1984).

The Court concludes that neither party is entitled to attorneys' fees and costs. Both parties have made meritorious arguments and there is no evidence of bad faith.

## ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Amended Motion for Summary Judgment and Motion for Attorneys' Fees and Costs [Docket No. 32] are **GRANTED in part and DENIED in part**.  The summary judgment motion is **granted** with respect to plaintiff's fraud claim and **denied** as to the ERISA claim.  Defendants' Motion For Attorneys' Fees and Costs is **DENIED**.

2.      Plaintiff Greeley's Amended Motion for Summary Judgment and Motion for Attorney's Fees and Costs [Docket No. 35] are **GRANTED in part and DENIED in part**.  The summary judgment motion is **granted** with respect to the ERISA claim and **denied** as to the fraud claim.

(a) Greeley is awarded past-due long-term disability benefits and prejudgment interest;[3]

(b) Defendants shall reinstate Greeley in its long-term disability plan as a participant entitled to benefits until he reaches age 67.

---

[3] Prejudgment interest is appropriate because (1) defendants have "continued to have use of the money," (2) "the exact amount of liability on the plan[] was never in doubt," and (3) "an award of prejudgment interest is necessary in order . . . [to] obtain 'appropriate equitable relief.'" *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1218-19 (8th Cir. 1981) (quoting 29 U.S.C. § 1132(a)(3)(B)).

Plaintiff's Motion For Attorneys' Fees and Costs is **DENIED**.


## LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED:    June 30, 2006                        _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                              United States District Judge